\*NOT FOR PUBLICATION\*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WENDY P. DRESSLER, | |
| Plaintiff, | Civ. No 3:14-cv-07060 (FLW)(DEA) |
| v. | OPINION |
| LIME ENERGY, | |
| Defendant. | |

### WOLFSON, U.S. DISTRICT JUDGE:

Presently before the Court is a motion filed by Defendant Lime Energy Services Co. ("Defendant" or "Lime Energy") to dismiss the Complaint filed by Plaintiff Wendy P. Dressler ("Plaintiff" or "Dressler"). a former employee at Lime Energy, who claims that Lime Energy violated the anti-retaliation provisions of the Dodd–Frank Wall Street Reform and Consumer Protection Act ("the Dodd–Frank Act," or "Dodd-Frank") when it allegedly wrongfully terminated Dressler's employment in retaliation for her making internal reports of securities law violations. Defendant's motion to dismiss, under 12(b)(6) of the Federal Rules of Civil Procedure, asserts that Dressler's Dodd–Frank Act claim fails as a matter of law because Dressler does not qualify as a "whistleblower" under Section 922 of the statute.

For the reasons that follow, the Court finds that Dressler does qualify as a "whistleblower" under Section 922 of the Dodd-Frank Act, and, accordingly, denies Defendant's motion.

### I.    Background

The following allegations are taken as true for the purposes of this Motion. Dressler is a former employee of Lime Energy, employed from May 2010 until her employment was terminated on

November 5, 2012. Compl. ¶ 3. Dressler worked at Lime Energy as an Administrator of the Public Sector for New York projects until late 2010, after which she became Account Manager in Lime Energy's Utilities Division, located in Woodbridge, New Jersey. *Id*. ¶ 9–13.

In the Utilities Division, Dressler was responsible for coding invoices and updating project entries in Lime Energy's account software system. *Id*. ¶ 14–15. She was required to update project entries even in instances where "backup documentation"[1] was not available, although it was Dressler's understanding that the documentation would be forthcoming. *Id*. Dressler alleges that Lime Energy's "standard explanation" for the missing backup documentation was that rapid growth prevented the signed completed paperwork from being available at the time. *Id*.

Dressler was also responsible for registering new projects that similarly lacked backup documentation, thus motivating Dressler to bring her concerns to supervisor Karan Raina ("Raina"). *Id*. ¶ 17. Even after articulating her concerns, Dressler continued to receive what were designated as "completed" contracts lacking backup documentation, such as the contract itself, submittal documentation, approvals, purchase orders, and invoices. *Id.* ¶ 18.

In late 2010, Dressler discovered discrepancies in Lime Energy's accounts receivable with respect to the company's accounts with TRC Companies, Inc. ("TRC"), which served as an intermediary between Lime Energy and the New Jersey Direct Install Program. *Id*. ¶ 20–22. Dressler alleges that Lime Energy was recording revenue on unsigned agreements and contracts that had not been approved by TRC—*i.e.*, projects for which no work could have been done—and then recognizing and booking that revenue as an account receivable. *Id*. ¶ 22. When Dressler brought these discrepancies to the attention of her supervisors, Dressler alleges that Raina and

---

[1] Backup documentation includes the relevant project contracts and associated invoices and purchase orders. Compl. ¶ 15.

another supervisor, Jack Almeida ("Almeida") informed her that the discrepancies were a result of rapid business growth and ordered Dressler to refrain from correcting the entries on the company's accounting program. *Id*. ¶ 23. Dressler alleges that in early 2011, she also raised her concerns internally with several other project managers and proposed a new internal control system to Almeida; however, Almeida ultimately rejected the system after Lime Energy failed to meet its revenue goals. *Id*. ¶ 25–27, 30.

In early 2012, at a large meeting with the company's CFO, Dressler alleges that upon voicing her concerns, Raina sent her an email warning and instructed her to refrain from discussing her complaints. *Id*. ¶ 33. In the following several months, Dressler asked Corporate Controller Julianne Chandler to perform an audit of Lime Energy's Woodbridge accounts and, soon after, presented the "Tracker"—a spreadsheet Dressler and two of her coworkers assembled in 2010 to track Lime Energy's "actual work performed" based on supporting documentation—at a corporate meeting. *Id*. ¶ 19, 34–35. In July 2012, Dressler called James Smith ("Smith"), then President of Lime Energy, to inform him that she would no longer follow Lime Energy's accounting practices. *Id*. ¶ 37. Dressler alleges that Smith responded favorably, praised her honesty, and promised to visit the Woodbridge office. *Id*. ¶ 37–38.

Following Smith's visit, Lime Energy conducted an internal investigation and implemented a new software system, to which employees were directed to upload supporting documentation for the various contracts. *Id*. ¶ 42. On July 17, 2012, Lime Energy filed a press release with the Securities and Exchange Commission ("SEC") announcing the results of a partial internal review, which found that Lime Energy's 2011 financial statements on Form 10–K and quarterly report on Form 10–Q for the period ending on March 31, 2012, could "no longer be relied on." *Id*. ¶ 44. The

press release indicated that Lime Energy had improperly recorded revenue and therefore advised that the misreporting could require restatement of affected financial statements. *Id.*

On November 5, 2012, Dressler was informed that her employment was being terminated because corporate counsel believed she should have either called the "1–800 number" in the employee handbook or reported the accounting issues directly to the SEC. *Id.* ¶ 47. Dressler alleges that she had no knowledge of being a target of the internal investigation, and had devoted "countless hours" in assisting management with the investigation into Lime Energy's accounting practices. *Id.* ¶ 48. Dressler does not allege that she ever reported Lime Energy's alleged violations to the SEC. *See generally* Compl.

On November 10, 2014, Plaintiff filed this Complaint, alleging a violation of the whistleblower-protection provision of the Dodd–Frank Act. *Id.* ¶ 51. Specifically, Plaintiff alleges that in providing information of Defendant's misconduct that "she reasonably believed violated 'provisions of Federal law relating to fraud against shareholders'" to the company's managers and officers, she engaged in protected conduct under the Sarbanes–Oxley Act of 2002 (15 U.S.C. 7201 et seq.) (also referred to as "Sarbanes–Oxley"), thus satisfying the protected disclosures listed in Section 78u–6(h)(1)(A)(iii) of the Dodd–Frank Act. *Id.* ¶ 52, 54.

Thereafter, Defendant moved to dismiss the Complaint, contending that the factual allegations in the Complaint fail to satisfy the elements of a Dodd–Frank whistleblower retaliation claim.

## II.   Standard of Review

On a motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6), a Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotes and citation

omitted). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard: the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 U.S. at 1965); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim . . . . The pleading standard is not akin to a probability requirement, . . . to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)).

In affirming that *Twombly'*s standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . [although a] limited exception

exists for documents that are integral to or explicitly relied upon in the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *Id*. at 98. This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." *Id*. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." *Id*. (quoting *Iqbal*, 129 S. Ct at 1953).

### III.   Relevant Statutory Provisions

#### a.   Dodd–Frank and Sarbanes–Oxley Whistleblower-Protection

The 2010 Dodd–Frank Act amended the Securities Exchange Act of 1934, in part, to provide incentives for and to protect whistleblowers. Often labeled by courts as the "whistleblower-incentive program," Sections 78u–6(b)–(g) create a mechanism by which whistleblowers can receive financial rewards for providing the SEC with information regarding the violations of securities laws. *See* 15 U.S.C. §78u–6(b)–(g); *see Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620 (5th Cir. 2013). Dodd–Frank also establishes a private cause of action, referred to as the "whistleblower-protection provision," for individuals whose employers retaliate against them for making specified protected disclosures. *See* 15 U.S.C. §78u–6(h). Here, the Court must decide whether an individual, who makes only internal disclosures and does not make disclosures to the SEC, may state a cause of action under the whistleblower-protection provision.

Subsection (a) of Dodd–Frank's Section 78u–6, titled "Securities whistleblower incentives and protection," provides a list of definitions for the purposes of the section. § 78u–6(a). Particularly, Subsection (a) states that "[t]he term "whistleblower" means any individual who provides . . .

information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." § 78u–6(a)(6). Subsection (h)(1)(A), the whistleblower-protection provision and the relevant statutory provision in this case, provides:

> [n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> (i) in providing information to the Commission in accordance with this section;
>
> (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>
> (iii) in making disclosures that are required or protected under the Sarbanes–Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j–1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

§ 78u–6(h)(1)(A). Subparagraph (B) provides a cause of action for any individual alleging discharge in violation of the whistleblower-protection provision of subparagraph (A). § 78u–6(h)(1)(B).

Meanwhile, the anti-retaliation provision of the Sarbanes–Oxley Act creates a civil right of action to protect employees from retaliation for providing information about securities law violations. *See* 18 U.S.C.A. § 1514A. Under Sarbanes–Oxley, employees are protected from retaliation for disclosing an alleged violation to a federal regulatory agency, a member of Congress, or, crucially, "a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)." *See* § 1514A(a)(1).

However, there are significant differences in the remedies and procedures associated with the Dodd–Frank and Sarbanes–Oxley anti-retaliation provisions. *Compare* 15 U.S.C. § 78u–6(h)(1)(C) with 18 U.S.C. § 1514A(c)(2); *see Somers v. Digital Realty Trust, Inc.*, No. C–14–5180

EMC, 2015 WL 2354807, at *4 (N.D. Cal. May 15, 2015). Significantly, Sarbanes–Oxley (1) provides for recovery of back pay without a multiplier, (2) requires first filing an administrative complaint with the Department of Labor, and (3) is governed by a significantly shorter statute of limitations, running at 180 days after the violation occurs or 180 days after the employee becomes aware of the violation. *See* 15 U.S.C. § 78u–6(h)(1)(B)(iii); 18 U.S.C. § 1514A(b)(2)(D); *see also Somers*, 2015 WL 2354807, at *4. Further, the Sarbanes–Oxley Act provides for economic damages such as emotional distress. *See Somers*, 2015 WL 2354807, at *4 (citing *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 266 (5th Cir. 2014)) (per curiam) (holding that Sarbanes–Oxley "affords noneconomic compensatory damages, including emotional distress and reputational harm"). By contrast, under the Dodd–Frank Act, (1) two times back pay is accorded as relief, (2) plaintiffs are not required to exhaust administrative remedies, and (3) the anti-retaliation provision allows six to ten years to file suit from the time the violation occurs. *See* 15 U.S.C. § 78u–6(h)(1)(B)(iii), (C); *see also Somers*, 2015 WL 2354807, at *4.

### b.  Agency's Statutory Interpretation — SEC Rule 21F–2(b)(1)

In 2011, the SEC promulgated a final rule interpreting the Dodd–Frank Act's whistleblower-protection provision. *See* Securities Whistleblower Incentives and Protections (Adopting Release), 78 Fed. Reg. 34300, 34301–34304 (June 13, 2011). Specifically, SEC Exchange Act Rule 21F–2(b)(1) states, in relevant part:

(1) For purposes of the anti-retaliation protections afforded by [15 U.S.C. § 78u–6(h)(1)], you are a whistleblower if:

(i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;

(ii) You provide that information in a manner described in [15 U.S.C. § 78u–6(h)(1)(A)].

(iii) The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.

17 C.F.R. § 240.21F–2(b)(1). As noted above, §78u–6(h)(1)(A) of the Dodd–Frank Act provides three categories of protected whistleblower activity, including "making disclosures that are required or protected under the Sarbanes–Oxley Act." 15 U.S.C. § 78u–6(h)(1)(A)(iii). "In turn, the Sarbanes–Oxley Act affords whistleblower protection to an employee who gives 'information or assistance' to 'a person with supervisory authority over the employee'", or to any other "such person working for the employer who has the authority to investigate, discover, or terminate misconduct." *Somers*, 2015 WL 2354807, at *5 (quoting 18 U.S.C. § 1514A(a)(1)(C)). "That is, Sarbanes–Oxley protects employee disclosures made internally to certain supervisory personnel irrespective of whether the employee separately reports the information to the SEC." *Id.* "Thus, by providing that an individual is a 'whistleblower if' they 'provide information in a manner described in' Subsection (iii) of Section 78u–6(h)(1)(A), Rule 21F–2(b)(1) stipulates that the whistleblowing-protection program of the [Dodd–Frank Act] does *not* require an employee to report violations directly to the SEC." *Id.* (citing *Connolly v. Remkes*, No. 5:14–CV–01344–LHK, 2014 WL 5473144 (N.D. Cal. Oct. 28, 2014)).

## IV.    Discussion

The disposition of Defendants' motion rests on whether Plaintiff qualifies as a "whistleblower" under the Dodd–Frank Act's anti-retaliation provision. Defendant Lime Energy has moved to dismiss Plaintiff's cause of action, which asserts a violation of 15 U.S.C. § 78u–6(h)(1)(A) of the Dodd–Frank Act, on the grounds that Plaintiff cannot demonstrate that she was a "whistleblower" as defined by the Dodd–Frank Act because she did not make protected disclosures to the SEC. Rather, Plaintiff merely alleges retaliation for her internal disclosures to senior management—as opposed to providing information directly to the SEC. Essentially, Defendant argues that under a

plain reading of the statute, the whistleblower-retaliation provisions of the Dodd–Frank Act do not apply to the communications alleged in Plaintiff's complaint.

Plaintiff counters that her internal disclosures to Defendant's managers, supervisors, and corporate agents, about conduct that she believed violated securities violations, constitute "protected conduct" under Section 806 of the Sarbanes–Oxley Act (18 U.S.C. § 1514A), and, thus, conduct that is protected under Section 78u–6(h)(1)(A)(iii) of the Dodd–Frank Act, which lists protected disclosures with respect to whistleblowers, including "disclosures that are required or protected under the Sarbanes[–]Oxley Act of 2002 . . . ." Compl. ¶ 52. Specifically, Plaintiff argues that the Court should defer to the SEC's subsequent rule, which states that "you are a whistleblower if . . .[y]ou possess a reasonable belief that the information you are providing relates to a possible securities law violation . . . that has occurred, is ongoing, or is about to occur, and . . . [y]ou provide that information in a manner described in [15 U.S.C. § 78u–6(h)(1)(A)].[2] 17 C.F.R. § 240.21F–2(b)(1); Comments to Final Rule, 2011 WL 2293084, at *34303–4 ("[T]he third category includes individuals who report to persons or governmental authorities other than the Commission."); *see Asadi*, 720 F.3d at 629 ("this regulation . . . redefines "whistleblower" more broadly by providing that an individual qualifies as a whistleblower even though he never reports any information to the SEC . . . ."). Thus, Plaintiff reasons, her disclosures were protected under the Sarbanes–Oxley Act, and therefore, were protected under the Dodd–Frank Act's whistleblower retaliation provisions.

---

[2] Plaintiff states at the outset that "as a matter of statutory construction, a whistleblower who only reports internally is entitled to whistleblower protection under the Dodd–Frank Act." Pl. Br. at 6. It is unclear whether Plaintiff is arguing that the statute unambiguously protects her conduct in addition to arguing that the statute is ambiguous and that the Court should adopt the SEC's interpretation. In any event, the Court finds *infra* that the statute is ambiguous.

In *Chevron*, the Supreme Court established a two-step framework for reviewing an administrative agency's interpretation of a statute.[3] 467 U.S. at 842–43. Under Step One, the Court must consider "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter." *Id*. If, however, "the statute is silent or ambiguous with respect to the specific issue," then the Court must proceed to Step Two and determine whether the agency's determination is "based on a permissible construction of the statute." *Id*.

"[W]hen the statutory language is clear and unambiguous, the legislature's intent is best divined by reference to the plain meaning of a statute." *Sery v. Fed. Bus. Centers, Inc.*, 365 F. App'x 396, 397 (3d Cir. 2010). "[T]he plain meaning of statutory language is often illuminated by considering not only the particular statutory language at issue, but also the structure of the section in which the key language is found, the design of the statute as a whole and its object." *Alaka v. Attorney General*, 456 F.3d 88, 104 (3d Cir. 2006) (internal quotation marks omitted).

There is a split of authority regarding whether a "whistleblower" under the Dodd–Frank Act must report directly to the SEC. Given the relative recency of the Dodd–Frank Act's enactment, "relatively few courts have addressed this issue, including a handful of federal district courts and one Circuit Court." *Khazin v. TD Ameritrade Holding Corp.*, No. CIV.A. 13–4149 SDW, 2014 WL 940703, at *4 (D.N.J. Mar. 11, 2014).

---

[3] As a threshold matter, "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Louisiana Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653, 670 (3d Cir. 2014) (citing *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001)).

Here, "[r]ule 21F–2(b)(1) was promulgated pursuant to an express provision of the [Dodd-Frank Act] and after a notice-and-comment period, and thus qualifies for *Chevron* deference." *Somers*, 2015 WL 2354807, at *5 (citing 15 U.S.C. § 78u–6(j); Adopting Release at 34300).

In *Asadi v. G.E. Energy (USA), L.L.C.*, the Fifth Circuit held that Dodd–Frank Act's whistleblower-protection provision is unambiguous and requires individuals to provide information to the SEC to qualify for retaliation protection. 720 F.3d at 629. The Fifth Circuit's reasoning has been adopted or agreed with by a minority of the district courts that have addressed this issue. *See Berman v. Neo@Ogilvy LLC,* 72 F. Supp. 3d 404 (S.D.N.Y. 2014); *Banko v. Apple Inc.*, 20 F. Supp. 3d 749 (N.D. Cal. 2013); *Englehart v. Career Educ. Corp.*, No. 8:14–CV–444–T–33EAJ, 2014 WL 2619501 (M.D. Fla. May 12, 2014); *Wagner v. Bank of Am. Corp.*, No. 12–CV–00381–RBJ, 2013 U.S. Dist. LEXIS 101297 (D. Colo. July 19, 2013).

The Third Circuit has not yet addressed this issue, and only one judge in this District has spoken on the matter, finding in *Khazin v. TD Ameritrade Holding Corp.* that the Dodd–Frank Act "is ambiguous with respect to who qualifies as a whistleblower for purposes of the anti-retaliation provision of the statute" and that the SEC rule "is a permissible construction of the statute and warrants judicial deference." *Khazin*, 2014 WL 940703, at *6. The *Khazin* court followed the large majority of district courts in construing the term "whistleblower" broadly and concluding that Dodd–Frank's whistleblower-protection provision applies to individuals protected under Sarbanes–Oxley, regardless of whether those individuals made disclosures directly to the SEC. *See Khazin*, 2014 WL 940703, at *6; *see also Ellington v. Giacoumakis,* No. 13–11791, 2013 WL 5631046, at *3 (D. Mass. Oct. 16, 2013); *Murray v. UBS Sec., LLC,* No. 12–5914, 2013 WL 2190084, at *7 (S.D.N.Y. May 21, 2013); *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1106–07 (D. Colo. 2013); *Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 995 (M.D. Tenn. 2012); *Kramer v. Trans–Lux Corp.*, No. 11 Civ. 1424, 2012 WL 4444820, at *6–7 (D. Conn. Sept. 25, 2012); *Egan v. Tradingscreen*, Inc., No. 10 Civ. 8202, 2011 WL 1672066, at *6–7 (S.D.N.Y. May 4, 2011).

12

Since *Khazin*, several other district courts have broadly construed the whistleblower-protection provision to include protection for internal disclosures, thus providing those affected individuals the opportunity to state a whistleblower retaliation claim under the Dodd–Frank Act. *See Somers*, 2015 WL 2354807, at *4 (finding the wording of the whistleblower-protection provision to be ambiguous and deferring to SEC Rule 21F–2(b)(1)); *Connolly*, 2014 WL 5473144, at *6 (holding that "the statutory definition of 'whistleblower' is ambiguous, and that the SEC's interpretation is a reasonable one that warrants deference"); *Bussing v. COR Clearing, LLC*, 20 F. Supp. 2d 719, 733 (D. Neb. 2014) (interpreting the whistleblower-protection provision as consistent with the SEC's regulation, rather than determining if deference is warranted); *Yang v. Navigators Group, Inc.*, 18 F. Supp. 3d 519, 534 (S.D.N.Y. 2014) (finding that the language and context of the statute result in ambiguity and deferring to the SEC's "reasonable" interpretation). In the recent *Somers* decision, the Northern District of California engaged in a thorough *Chevron* analysis in light of the Fifth Circuit's decision in *Asadi*, ultimately rejecting the Fifth Circuit's reasoning and finding that the Dodd–Frank Act's whistleblower-protection provision is ambiguous. *See Somers*, 2015 WL 2354807.

Upon review of the burgeoning case law and the independent application of the *Chevron* framework, while I find the question of whether the statutory provision in question is ambiguous to be a close one, I join the majority of courts that have analyzed this issue in finding that (1) the Dodd–Frank Act's whistleblower-protection provision is ambiguous and, consequently, that (2) the SEC's rule is reasonable.

### a. *Chevron* Step One

Under Step One of *Chevron*, the Court must determine whether the whistleblower-protection provision of the Dodd–Frank Act is ambiguous. At Step One, the Court considers the text and

structure of the statute in question. *See United States v. Geiser*, 527 F.3d 288, 292 (3d Cir. 2008) (citing *Zheng v. Gonzales*, 422 F.3d 98, 120 (3d Cir. 2005)). "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004) (internal citations and quotations omitted); *see Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *Geiser*, 527 F.3d at 294. For this reason, "our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc*, 541 U.S. at 183; *see Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001) ("Where the statutory language is plain and unambiguous, further inquiry is not required.").

"[W]hen the statutory language is clear and unambiguous, the legislature's intent is best divined by reference to the plain meaning of a statute." *Sery*, 365 F. App'x at 397. "[T]he plain meaning of statutory language is often illuminated by considering not only the particular statutory language at issue, but also the structure of the section in which the key language is found, the design of the statute as a whole and its object." *Alaka*, 456 F.3d at 104 (internal quotation marks omitted). While courts must use the language of the statute itself as a starting point for interpretation, "statutory language must be read with reference to its statutory context." *Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 200 (3d Cir. 2015). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Id.* (citing *United States v. Husmann*, 765 F.3d 169, 173 (3d Cir. 2014)). However, while the Third Circuit has indicated that a statute should be read in its broader context as a whole, nonetheless, courts should not consider legislative history

14

at *Chevron* Step One. *See Geisinger Cmty. Med. Ctr. v. Sec'y U.S. Dep't of Health & Human Servs.*, No. 15–1202, 2015 WL 4478133, at *6 (3d Cir. July 23, 2015) (declining to consider legislative history in its Step One analysis). Although the *Asadi* court found that a clear definitional term must control, last year "the Supreme Court concluded that an express and clear definitional term in a statute may ultimately need to yield to countervailing interpretative factors in order to harmonize the meaning of a statute." *Somers*, 2015 WL 2354807, at *7 (citing *Bond v. United States*, 134 S. Ct. 2077, 2091 (2014) (finding that the statute's clear definition of "chemical weapons" should not be given its defined meaning because doing so would violate the principle of statutory interpretation preserving the constitutional balance between the federal and state governments)).

### i. A Restrictive Interpretation of the Whistleblower Definition does not render the Statutory Language Superfluous.

Defendant argues that the plain language of the Dodd–Frank Act is unambiguous as to whether an individual who does not provide information to the SEC prior to termination may state an anti-retaliation claim under the statute. Here, the Court looks to traditional canons of statutory interpretation, including the surplusage canon, which holds that "courts should construe statutory language to avoid interpretations that would render any phrase superfluous." *United States v. Cooper*, 396 F.3d 308, 312 (3d Cir. 2005) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)); *see Geisinger*, 2015 WL 4478133, at *6 ("One of our 'most basic interpretive canons' is that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'") (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). Both parties argue that their respective readings of the statute avoid surplusage and thus maintain the "cardinal principle of statutory construction that a statute ought, upon the whole,

to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW*, 534 U.S. at 31.

Defendant contends that the *Asadi* court's reading of the term "whistleblower" appropriately avoids excluding the phrase "to the Commission" from the definition. However, Plaintiff asserts that were the Court to read the third category of protected disclosures—those that "are required or protected under the Sarbanes–Oxley Act . . . and any other law, rule, or regulation subject to the jurisdiction of the [SEC]"—as requiring disclosure to the SEC, Subsection (iii) would be rendered superfluous. Specifically, because Subsections (i) and (ii) already protect only those whistleblowers who disclose directly to the SEC, the third category, which does not specify as to whom the disclosure must be made, would serve no purpose.

The Court acknowledges the force of Plaintiff's argument. Indeed, multiple courts have agreed with this reasoning, suggesting that Subsection (iii) contemplates a broader scope of protection then the definition of "whistleblower" in Section 78u–6(a)(6), which limits protection to those who make disclosures to the SEC. *See Connolly*, 2014 WL 5473144, at *17 ("[Subsection (iii)] would be ineffective if whistleblowers must report directly to the SEC"); *Murray*, 2013 WL 2190084, at *4; *see also Somers*, 2015 WL 4483955, at *8-10.

However, this Court does not find this argument entirely persuasive. As the Fifth Circuit has noted, there are circumstances under which both provisions could be read in harmony: for example, where an employee reported securities law violations both to his employer and to the SEC.

> Assume a mid-level manager discovers a securities law violation. On the day he makes this discovery, he immediately reports this securities law violation (1) to his company's chief executive officer ("CEO") and (2) to the SEC. Unfortunately for the mid-level manager, the CEO, who is not yet aware of the disclosure to the SEC, immediately fires the mid-level manager. The mid-level manager, clearly a "whistleblower" as defined in Dodd–Frank because he provided information to the SEC relating to a securities law violation, would be unable to prove that he was retaliated against because of the report to the SEC. Accordingly, the first and second category of protected activity would not shield this

whistleblower from retaliation. The third category of protected activity, however, protects the mid-level manager. In this scenario, the internal disclosure to the CEO, a person with supervisory authority over the mid-level manager, is protected under 18 U.S.C. § 1514A, the anti-retaliation provision enacted as part of the Sarbanes–Oxley Act of 2002 ("the [Sarbanes–Oxley] anti-retaliation provision"). Accordingly, even though the CEO was not aware of the report to the SEC at the time he terminated the mid-level manager, the mid-level manager can state a claim under the Dodd–Frank whistleblower-protection provision because he was a "whistleblower" and suffered retaliation based on his disclosure to the CEO, which was protected under [Sarbanes–Oxley].

*Somers*, 2015 WL 2354807, at *8 (citing *Asadi*, 720 F.3d at 627–28).

Because the *Asadi* court's hypothetical presents a valid scenario where an individual who satisfies the "whistleblower" definition at § 78u–6(a)(6)—that is, an individual who provides information to the SEC—is protected by § 78u–6(h)(1)(A)(iii), the Dodd-Frank anti-retaliation provisions cannot be said to be superfluous.[5] *Asadi*, 720 F.3d at 627–28; *see also, e.g.*, *Berman v. Neo@Ogilvy LLC*, 72 F. Supp. 3d 404, 409 (S.D.N.Y. 2014).

### ii. The Dodd-Frank and Sarbanes-Oxley Provisions At Issue are Nonetheless in Tension with One Another

Nonetheless, inconsistencies between the Dodd-Frank antiretaliation provisions and Sarbanes-Oxley provisions referenced therein remain, each of which arguably creates ambiguity regarding whether the protected activities under Subsection (iii) require disclosure to the SEC. To begin, the *Somers* court insightfully notes multiple points of tension between the two provisions. *See Somers*, 2015 WL 2354807, at *9. In particular, that court recognized that Subsection (iii), in broadly protecting disclosures protected under Sarbanes-Oxley, protects whistleblowers from

---

[5] With respect to 78j–1(m), an individual could both provide information to the audit committee and disclose information to the SEC, thus qualifying that individual as a "whistleblower" under Section 78u–6(a)(6). Similarly, an individual seeking protection under Subsection (iii) pursuant to its reference to Section 1513(e) may have provided information to the SEC and a law enforcement officer, whether simultaneously or separately. There too, the individual would satisfy the narrow "whistleblower" definition.

17

retaliation for making disclosures required or protected pursuant to § 78j–1, which governs audit requirements under the Dodd–Frank Act. § 78u–6(h)(1)(A)(iii); *see Somers*, 2015 WL 2354807, at *9. Section 78j–1(b) requires a registered public accounting firm to "inform the appropriate level of the management of the issuer and assure that the audit committee of the issuer, or the board of directors of the issuer in the absence of such a committee, is adequately informed . . . ." of a likely illegal act in the course of an audit pursuant to the chapter. *See* 15 U.S.C. § 78j–1(b)(1)(B). The *Somers* court found that "[S]ection 78j–1 only *permits* an auditor to report such 'illegal acts' to the SEC *if* the board of directors or other internal management fails to take appropriate remedial action." 2015 WL 2354807, at *9. Under that interpretation, in which only a small fraction of actions taken under 78j–1 would be consistent with the Section 78u–6(a)(6) "whistleblower" definition, "nearly all of the conduct 'required' under [S]ection 78j–1 and its scheme of internal reports would be undermined."[7] *Somers*, 2015 WL 2354807, at *9.

While *Somers* focuses on Subsection (iii)'s implicit reference to Section 78j–1(b) in finding the aforementioned tension, Subsection (iii) explicitly prohibits retaliation against individuals who

---

[7] As another example, the *Somers* court refers to 15 U.S.C. § 7245 of the Sarbanes-Oxley Act, which requires attorneys to report securities violations "internally up the chain of command." 15 U.S.C. § 7245(1)–(2) (compelling attorneys to report violations to the chief legal counsel, chief executive officer, and audit committee of the board of directors); *Somers*, 2015 WL 2354807, at *10. A subsequent SEC rule requires attorneys to report violations internally prior to reporting to the SEC. *See* 17 C.F.R. § 205.3(b)(1).

The Court finds the *Somers* court's reasoning to be persuasive, but not does not adopt its reasoning in its entirety. As the court acknowledged there, Subsection § 78j–1(b) does protect disclosures to the SEC, albeit after a series of failed internal reports. However, if Congress intended the Dodd–Frank's whistleblower-protection provision to *only* apply to individuals providing information to the SEC, Congress may have similarly intended to *only* protect the limited class in this subsection who have exhausted their internal reporting options. While this interpretation seemingly conflicts with the statute's broader policy goals, the plain language of that provision might require a Court to accept the statute as Congress has intended. Generally, however, the speculation in which courts have had to engage regarding Congressional intent weighs in favor of finding ambiguity.

made disclosures that are required or protected under Section 78j–1(m) of the statute. § 78u–6(h)(1)(A) ("No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower . . . (iii) in making disclosures that are required or protected under the Sarbanes–Oxley Act of 2002 . . . including section 78j–1(m) of this title . . . ."). However, Section 78j–1(m), titled 'Standard relating to audit committees,' protects the provision of information to the audit committee, and neither requires, nor discusses, disclosure to the SEC. *See* § 78j–1(m)(4) (instructing audit committees to establish procedures for complaints and submissions by employees). This Court finds that the exclusion of any SEC reporting requirement in Section 78j–1(m) to be an even stronger point of tension between the provisions, thereby weighing in favor of finding ambiguity in the statute as a whole.

Finally, Subsection (iii) also explicitly applies to actions required or protected under Section 1513(e) of Title 18. *See* § 78u–6(h)(1)(A)("No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower . . . (iii) in making disclosures that are required or protected under the Sarbanes–Oxley Act of 2002 . . . including . . . section 1513(e) of Title 18. . . ."). 18 U.S.C. § 1513(e) imposes criminal penalties, including fines or imprisonment, for "knowingly, with the intent to retaliate, [taking] any action harmful to any person . . . for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense . . . ." Here again, the protected activity is not limited to the provision of information to the SEC; rather Section 1513(e) generally imposes a criminal penalty for retaliating against those who provide information to a "law enforcement officer." § 1513(e). While the term "law enforcement officer" may include

enforcement members of the SEC, the lack of specificity in Subsection (iii) as to whom individuals must report to under Section 1513 creates significant tension in the statute. Again, the vagueness in this protected activity pursuant to Subsection (iii) weighs in favor of a finding of ambiguity.

Therefore, in light of these multiple points of tension, I find the broad language of the statutory provisions and protected activities in Subsection (iii) may envision a more expansive scope of protection than that attributed to the term "whistleblower" at Section 78u–6(a)(6). At the very least, this tension weighs heavily in favor of a finding of ambiguity.

### iii. Dodd–Frank's Inconsistent Language Also Weighs In Favor of Ambiguity.

Moreover, the wording of Subsections (i) and (ii), as compared to the language of Subsection (iii), also supports a finding of ambiguity. As noted by the Supreme Court, "certain language in one part of the statute and different language in another" can indicate that "different meanings were intended." *See Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 825 (2013) (quoting *Sosa v. Alvarez–Machain*, 542 U.S. 692, 711, n.9 (2004)); *but see E.P.A. v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584, 1620 (2014) (suggesting that the "negative implication canon" can be helpful in determining meaning but can be overcome by other indications of meaning elsewhere in the statute). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Geisinger*, 2015 WL 4478133, at *9 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Here, both Subsections (i) and (ii) refer explicitly to disclosures or activities directed towards the SEC, whereas Subsection (iii) makes no reference to the Commission whatsoever. *See* § 78u–6(h)(1)(A). The omission of any reference to the Commission in Subsection (iii) indicates that

Congress may have intended different meanings with respect *to whom* an individual must report securities violations.[9] *See Somers*, 2015 WL 2354807, at *10. This inconsistency also weighs in favor of finding the Dodd-Frank antiretaliation provisions to be ambiguous.

### iv. Reading the Dodd Frank Antiretaliation Provisions to Protect Internal Disclosures Would Not Render the Sarbanes-Oxley Antiretaliation Protections Moot

Defendant contends that Congress could not have intended to protect internal complaints under the Dodd–Frank Act because otherwise, the Sarbanes–Oxley whistleblower protections would be rendered obsolete. In doing so, Defendant relies heavily on the *Asadi* court's finding that "construing the Dodd–Frank whistleblower-protection provision to extend beyond the statutory definition of 'whistleblowers' renders the [Sarbanes–Oxley Act's] anti-retaliation provision, for practical purposes, moot." *Asadi*, 720 F.3d at 628. Defendant, borrowing *Asadi*'s reasoning, further asserts that if all Sarbanes–Oxley protected activity falls into the scope of Dodd–Frank's whistleblower provisions, regardless of disclosure to the SEC, then all Sarbanes–Oxley claimants would be able to file a retaliation claim under Dodd–Frank's whistleblower-protection provision. The *Asadi* court found that, given the distinctions between the two statute's whistleblower-protection provisions that arguably favor claimants under Dodd–Frank, it would be unlikely for an individual to instead file an anti-retaliation claim under the Sarbanes–Oxley Act. *Id*.

---

[9] Indeed, Dodd–Frank's legislative history likewise suggests that Congress intended the "last-minute" Subsection (iii) to broaden the scope of protected whistleblowers. *See id*. at *11 (indicating that the conflict between Subsection (iii) and the statute's narrow "whistleblower" definition may have been legislative oversight). Ultimately, the varied language in the protected disclosures, in conjunction with the legislative history, further support Plaintiff's contention that the statute is ambiguous. However, pursuant to *Geisinger*, the Court does not rely on this point in weighing the ambiguity of the statute at this step. *See Geisinger*, No. 15–1202, 2015 WL 4478133, at *6.

However, this Court finds the Defendant's argument to be overstated. There are multiple reasons why an individual would choose to file an anti-retaliation claim under the Sarbanes–Oxley Act, instead of, or in addition to, a claim under Dodd–Frank. For example, individuals may prefer Sarbanes–Oxley's administrative forum, in which "OSHA assumes responsibility for investigating and presenting a retaliation claim under [the statute]." *See Somers*, 2015 WL 2354807, at *11 (citing 29 C.F.R. § 1980.104–1980.105). Further, Sarbanes–Oxley provides successful plaintiffs with types of monetary damages not available under the Dodd–Frank Act, such as those for noneconomic harms including emotional distress and reputational harm. *See* 18 U.S.C. § 1514A(c)(2)(C); *See Somers*, 2015 WL 2354807, at *11 (citing *Halliburton, Inc. v. Administrative Review Bd.*, 771 F.3d 254 (5th Cir. 2014) ("[T]he statute affords noneconomic compensatory damages, including emotional distress and reputational harm")).

In conclusion, the Court finds that a broad interpretation of the Dodd–Frank Act, whereby even individuals who do not provide information to the SEC are protected from retaliation, would not make the Sarbanes–Oxley whistleblower-retaliation provision a "moot" one. Therefore, Defendant's argument does not support its contention that the statute is unambiguous.[10]

---

[10] Plaintiff contends that in light of public policy considerations, promotion of internal reporting is desirable. First, internal reporting protected by whistleblower-protection laws would encourage reporting of potential securities violations and would allow a company the opportunity to redress its wrongs. Further, internal reporting serves a gatekeeping function by preserving limited government resources, thus allowing the SEC to direct its efforts on the most salient employee accusations. Lastly, Plaintiff alleges that protecting internal reporting under Dodd–Frank is consistent with the SEC's goals in pursuing employers who retaliated against whistleblowers.

Where the statutory language is plain and unambiguous, "a court should not take the additional steps of considering . . . general policy objectives." *Bd. of Trustees of IBT Local 863 Pension Fund v. C & S Wholesale Grocers Inc./Woodbridge Logistics LLC*, 5 F. Supp. 3d 707, 717 (D.N.J. 2014) (citing *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 295 (3d Cir. 2012)). A statute's language "is ambiguous only where the disputed language is 'reasonably susceptible of different interpretations.'" *Id.* (citing *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010)). While conflicts between a statute's plain meaning and general policy objectives ought to be resolved in favor of the statute's plain meaning, *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 569

### v. Summary

The Court finds that the relevant provisions of Dodd–Frank are susceptible to more than one interpretation. While the *Asadi* court's interpretation is a permissible one, the countervailing interpretation as postured by Plaintiff is equally, if not more, reasonable. Though it is a close question, the Court finds the whistleblower-protection provision of the statute to be ambiguous

---

(3d Cir. 2002), considerations of public policy are appropriate where the statutory language is ambiguous. *See In re Phila. Newspapers, LLC,* 599 F.3d at 304.

While the Court acknowledges the limited weight of public policy considerations in the context of statutory interpretation, it considers those policy interests where they help elucidate the statute in the face of conflicting interpretations. "The relevant 'portions of Dodd–Frank are—at a minimum—susceptible to more than one interpretation when read together.'" *Somers*, 2015 WL 2354807, at *12 (quoting *Connolly*, 2014 WL 5473144, at *6); *see Rosenblum v. Thomson Reuters (Markets) LLC*, 984 F. Supp. 2d, 141, 147–48 (S.D.N.Y. 2013) ("When considering the DFA as a whole, it is plain that a narrow reading of the statute requiring a report to the SEC conflicts with the anti-retaliation provision, which does not have such a requirement. Thus, the governing statute is ambiguous."). The *Asadi* court's interpretation—reading subsection (iii) narrowly to require reporting information to the SEC—is "'contrary to Dodd–Frank's purpose of encouraging reporting of securities violations' and otherwise improving accountability in the financial system." *Id*. at 11 (quoting *Connolly*, 2014 WL 5473144, at *5).

Further, it is unlikely that Congress would depart "from the general practice of first making an internal report." *Bussing*, 20 F. Supp. 2d 719, 733. Internal reporting serves important interests of the SEC and employers, such as adhering to internal compliance programs and allowing companies the opportunity to remedy improper conduct before it becomes a violation. *Id*. (citing Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300–01, 2011 WL 2293084, at *34324 (Aug. 12, 2011)). As Plaintiff suggests, internal reporting prevents the SEC from receiving reports of mere misunderstandings—which may result in costly investigations—so that the Commission would receive fewer and higher quality reports. *See id*. "Thus[,] . . . the *Asadi* interpretation is over-inclusive, as it encourages reports to the SEC that could be more efficiently handled internally, thus wasting government resources generally and diverting resources from cases that need the SEC's full attention." *Id*. Lastly, the *Asadi* court's interpretation imposes employer liability for retaliation only when an employee reports to the SEC, an action of which the employer may have no knowledge. The Court finds that this peculiar form of liability weighs in favor of the broader "whistleblower" definition, or at least makes light of the conflicting policy considerations.

Therefore, the Court finds that the tension between a restrictive interpretation of the "whistleblower" definition and the conflicting policy considerations also weighs in favor of finding ambiguity in the statute.

and thus proceeds to Step Two of the *Chevron* test to determine whether the SEC's statutory interpretation is reasonable and permissible.

### b. *Chevron* Step Two

At Step Two, Defendant first argues that the Court should not defer to the SEC's interpretation because the statute's language is unambiguous in requiring an individual to provide information to the SEC. Alternatively, Defendant contends that the whistleblower provision, which defines "whistleblower" as "any individual who provides . . . information relating to a violation of the securities laws to the [SEC] . . . ," renders the SEC interpretation an impermissible construction of the statute. § 78u–6(a)(6). Specifically, Defendant notes that the SEC Final Rule does not address the impact of the agency's interpretation on the Sarbanes–Oxley whistleblower provision, which the SEC indicated was largely unchanged by the Dodd–Frank Act.[11] Def. Br. at 9. In essence, Defendant asserts that because the SEC interpretation renders Sarbanes–Oxley's whistleblower protections obsolete without explanation, the Final Rule is not entitled to deference.

Under *Chevron*, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. The Supreme Court has recognized the considerable weight that should be accorded to an executive department's construction of a statutory scheme and the principle of deference to administrative interpretations. *See id*. Further, that principle "has been consistently followed by [the Supreme Court] whenever decision[s] as to the meaning or reach of

---

[11] Defendant cites to the Summary of Statutory Changes to the Sarbanes–Oxley Whistleblower Provisions provided by the SEC as part of its proposed Interim Final Rule. *See* Procedures for the Handling of Retaliation Complaints Under Section 806 of the Sarbanes-Oxley Act of 2002, as Amended, 76 FR 68084-01 ("Dodd-Frank left the remaining requirements of the Sarbanes-Oxley whistleblower provision unchanged.). As discussed *supra*, the Court disagrees with Defendant's contention that Sarbanes–Oxley's whistleblower protections are rendered moot if a broader remedy is given under the whistleblower protection in Dodd-Frank.

a statute [have] involved reconciling conflicting policies . . . ." *Id.* "Simply, this 'second step' of Chevron requires deference unless the agency's interpretation was arbitrary, capricious, or manifestly contrary to the statute." *See Chen v. Ashcroft*, 381 F.3d 221, 223–24 (3d Cir. 2004). Given that agency rules are often the culmination of "intense debate between the agency, Congress, other members of the Executive Branch and the public", they should not be disturbed if "'this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute . . . .'" *Swallows Holding, Ltd. v. C.I.R.*, 515 F.3d 162, 171 (3d Cir. 2008) (quoting *Chevron* at 845). A reviewing court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n. 11. Rather, courts "need accept only those agency interpretations that are reasonable in light of the principles of construction courts normally employ." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 272 (2010).

The present question for the Court is whether the SEC, in promulgating Rule 21F–2(b)(1), interpreted the Dodd–Frank Act reasonably and permissibly in concluding that the anti-retaliation provisions afforded by the statute apply to individuals who report only internally, rather than to the Commission. Every court that has considered the reasonableness of the SEC interpretation in the context of *Chevron* Step Two has concluded that the agency interpretation is, in fact, permissible. *See e.g.*, *Somers*, 2015 WL 2354807, at *12; *Connolly*, 2014 WL 5473144, at *6 ("The SEC's interpretation is a reasonable position that most other courts have adopted"); *Yang*, 18 F. Supp. 3d. at 534 (noting "the SEC in revising and refining the rule 'considered the policy issues involved and exercised judgment' in making changes to 'better achieve the goals of the statutory whistleblower program and advance effective enforcement of the Federal securities

laws.'""); *Khazin*, 2014 WL 940703, at *6 (holding that "the SEC's rule is a permissible construction of the statute and warrants judicial deference"); *Murray*, 2013 WL 2190084, at *5 ("[T]he SEC's interpretation is a reasonable one . . . .").

In accordance with the aforementioned district courts, this Court finds the SEC's interpretation to be a reasonable and permissible construction of the Dodd–Frank Act's whistleblower-protection provision. The SEC interpretation is reasonable because it "eliminates the tension between the narrow definition of whistleblower in [§ 78u–6(a)(6)] and the seemingly very broad coverage of [S]ubsection (iii)." *See Somers*, 2015 WL 2354807, at *12. Specifically, the interpretation reasonably clarifies how individuals can make an anti-retaliation claim for the broad spectrum of protected activities under Subsection (iii) in the face of the narrow "whistleblower" definition. In doing so, the Rule 21F–2(b)(1) reasonably construes the statute "in light of principles of construction that courts normally employ." *Morrison*, 561 U.S. at 272.

Moreover, the interpretation is reasonable in light of the many policy considerations of the Dodd–Frank Act and whistleblower protection generally, including incentives for reporting illegal activities and encouraging internal reporting. "[It] is apparent that the SEC considered the policy issues involved and exercised judgment in formulating its final rule." *Murray*, 2013 WL 2190084, at *6 (deferring to the SEC's Final Rule in light of, in part, the agency's "considerable experience and expertise" and careful consideration of the whistleblower-retaliation policy during the notice-and-comment period). The SEC's interpretation permissibly construes the whistleblower provision to include protections for internal reporting because it "comports with Dodd–Frank's scheme to incentivize broader reporting of illegal activities." *Connolly*, 2014 WL 5473144, at *6; *see also Kramer v. Trans–Lux Corp.*, No. 3:11–cv–1424 (SRU), 2012 WL 4444820, at *5 (D. Conn. Sep.

15, 2012) (noting that Dodd–Frank "appears to have been intended to expand upon the protections of Sarbanes–Oxley").

Further, the SEC's interpretation encourages internal reporting of possible securities violations and enhances the agency's ability to enforce anti-retaliation policies. *See Somers*, 2015 WL 2354807, at *12–13 (finding that the rule prevented a "two-tiered structure" of anti-retaliation protection and strengthened the deterrence effect on employers who may otherwise take retaliatory action).

Because Rule 21F–2(b)(1) is a reasonable and permissible interpretation of Dodd–Frank's whistleblower-protection provisions, the Rule therefore is entitled to deference. *See Chevron*, 467 U.S. at 843 ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.).

Therefore, because Plaintiff has alleged that Defendant's decision to terminate her employment was motivated, in part, by her making disclosures that are protected by Section 806 of the Sarbanes–Oxley Act, she has plausibly stated a claim under the Dodd–Frank Act's Section 78u–6(h)(1)(A)(iii).[12]

**V.    Conclusion**

---

[12] Obviously, this Court is making no comment about the viability of the claim, apart from the limited legal rendering made here on the only issue raised in Defendant's motion.

Indeed, the Court notes that Plaintiff asserts in her Complaint that she began to internally communicate her concerns to her supervisors and colleagues about the accounting discrepancies in early 2011. *See* Compl. ¶ 2. However, she was not terminated until nearly two years later, on November 5, 2012, after Defendant had (1) hired a new controller, (2) conducted an internal audit, (3) implemented a new documentation software system, and (4) filed a press release with the SEC acknowledging that the company believed that it had improperly recorded revenue. *Id.* ¶¶ 33, 42, 44, 47. Further, Plaintiff alleges in her Complaint that she was terminated along with three other employees and that Defendant stated that it was "letting her go because the Company's corporate counsel believed that Plaintiff should have called the 1-800 number in the employee handbook or reported the Company's accounting issues to the SEC." *Id.* ¶ 47.

For the reasons set forth above, this Court hereby denies Defendant's Motion to Dismiss for failure to state a claim. An appropriate order will follow.


Dated: August 13, 2015                                    /s/    Freda L. Wolfson
                                                          Freda L. Wolfson, U.S.D.J.

28