**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | : | |
| WENDY P. DRESSLER, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 14-7060 (FLW)(DEA) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| LIME ENERGY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

This matter comes before the Court on a motion [ECF No. 28] by Plaintiff for leave to amend the Complaint. Defendants have opposed the motion, and the Court decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons below, Plaintiff's motion is denied.

## I.  PLAINTIFF'S ALLEGATIONS

This matter arises out of Plaintiff Wendy P. Dressler's ("Plaintiff") employment with Defendant Lime Energy Services Co. ("Defendant" or "Lime") and the subsequent termination of her employment. Plaintiff is a former employee of Defendant in its Woodbridge, New Jersey office, where, during the relevant period, she held the position of accounting manager in Defendant's utilities division. In that position, she was responsible for accounts payable for two utility programs (New Jersey Direct Install and Consolidated Edison Inc.) as well as coding invoices and updating project entries in Defendant's "Solomon" accounting software system.

In late 2010, Plaintiff alleges she discovered discrepancies in Defendant's accounts receivables and internally raised concerns. Specifically, Plaintiff alleges that Defendant was recording revenue on projects for which no work could have been done and recognizing and booking the revenue as an account receivable. Plaintiff first notified her immediate supervisors

of her observations and was informed that the discrepancies were the result of rapid business growth.  She was told to refrain from correcting the entries.  Over time, Plaintiff continued to express her concerns internally, including at a 2012 meeting with the Lime's Chief Financial Officer and later informing Lime's President that she would no longer follow Lime's accounting practices.  In or about July 2012, the company conducted an internal investigation and implemented a new software system.  Defendant also filed a press release with the Securities and Exchange Commission ("SEC") announcing that Lime's 2011 financial statements could no longer be relied on.  A few months later, Plaintiff was informed that her employment was being terminated because she failed to properly report the accounting issues to the SEC or through the company's "800" number in the employee handbook designated for such reports, but instead had raised the matter with her immediate supervisors.

In her original single-count Complaint, Plaintiff alleges that Defendant terminated her employment in retaliation for reporting that Defendant improperly recorded revenue, thereby violating the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78a, *et seq.* ("Dodd-Frank").  In her proposed Amended Complaint, Plaintiff seeks to add two additional Counts:  Proposed Count II, entitled "Promissory Estoppel Based on the Whistleblower Policy Promulgated in the Handbook", and Proposed Count III, entitled "Detrimental Reliance, Equitable Estoppel, and Unjust Enrichment".  Plaintiff alleges Lime's Employee Handbook contains a whistleblower policy (the "Whistleblower Policy") that advises employees of the whistleblower protections of the Sarbanes-Oxley Act, as well as procedures for raising internal complaints at Lime (the "Complaint Policy" ).  Plaintiff's proposed Amended Complaint alleges that she relied on these policies in the Handbook to her detriment in that she reported an alleged

2

issue according to the procedures allegedly outlined in the Handbook and was subsequently

terminated by Lime.

The Whistleblower Policy in the Handbook states as follows:

An employee who provides information or assists in investigations of securities law violations or who files, testifies in or participates in proceedings involving a public company's alleged violations of securities laws or Securities Exchange Commission (SEC) regulations is termed a whistle-blower. The Sarbanes-Oxley Act of 2002 protects whistle-blowers from being discriminated against. The Company, being a publicly traded company, and any officer, employee, contractor, subcontractor, or agent of the Company, may not discharge, demote, suspend, threaten, harass, or in any other manner discriminate against a whistle-blower in the term [sic] and conditions of employment because of any lawful act done by the employee (1) to provide information which the employee reasonably believes constitutes a violation of any rule or regulation of the SEC relating to fraud against shareholder; or (2) to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed relating to an alleged SEC violation.

An employee who wishes to discuss an alleged SEC violation of the Company can contact a senior member of management or the Company's outside counsel, Joel Weinstein, at (310)286-1700 or [certain listed] members of the Company's Audit Committee.

In addition, reports of potential violations of SEC rules may leave an anonymous message on the Company's automated voice mail system.  Any messages received will be forwarded to … the Chairman of the Company's Audit Committee.  To leave a message on the Ethics voice mail hotline, please call 888-365-0087.

ECF No. 31-2 at 88-89.

Section E of the Handbook entitled "On the Job Policies" provides an Internal Complaint

Procedure in subsection 8, as follows:

To foster sound employee-employer relations through communication and reconciliation of work-related problems, the Company provides employees with an established open door policy for expressing employment related concerns. In situations where an employee believes a complaint is in order, the following steps should be taken:

• First the employee should attempt to resolve the issue through discussions with his/her immediate supervisor.  If the complaint involves the employee's supervisor, the employee should contact the next level supervisor or the Human Resources Department;

  • If the situation is not resolved within five working days from the time the complaint is discussed with the supervisor, barring extenuating circumstances, it should be brought to the attention of the next level supervisor or the Human Resources Department.  The Company will attempt to resolve the complaint within a reasonable period of time while preserving the confidentiality and privacy of those involved to the extent feasible.

ECF No. 31-2 at 78-79.

Plaintiff also cites to Section A.4 in her proposed Amended Complaint, which is titled "Non-Discrimination and Anti-Harassment Policy."  Under this section, the "Company requires the reporting of all incidents of discrimination, harassment or retaliation…".  ECF No. 31-2 at 10.  Section A.4 further states that "It is the right and responsibility of individuals who believe they have experienced conduct contrary to the Company's policies or who have concerns about such matters should [sic] file their complaints with their immediate supervisor, their Human Resources Officer, a Company executive or using the Safety and Employee Relations Hotline." *Id.*

## II.  ANALYSIS

Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires."  The decision to grant leave to amend rests within the sound discretion of the trial court.  *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1970).  In determining a motion for leave to amend, courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western*

*Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Defendant argues that the amendments sought by Plaintiff are futile.  An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). To evaluate futility, the District Court uses "the same standard of legal sufficiency" as applied to a motion to dismiss under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  To determine if a pleading would survive a Rule 12(b)(6) motion, the Court must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of the party asserting them. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face [.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Put succinctly, the alleged facts must be sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  In determining futility, the Court considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon same.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Proposed Count II—Promissory Estoppel

In New Jersey, promissory estoppel consists of: "(1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise[;] and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise." *Kelly v. Simon Prop. Grp., Inc.*, No. CIV.A. 09-1274, 2010 WL 4292018, at *7 (D.N.J. Oct. 21, 2010) (citing *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 163 N.J. Super. 463, 479, 395 A.2d 222 (App.Div.1978); *Peck v. Imedia, Inc.*, 293 N.J. Super. 151, 165, 679 A.2d 745 (App.Div.1996); *Watson v. City of Salem*, 934 F. Supp. 643, 661 (D.N.J. 1995)).  As to the first element, Plaintiff alleges in the proposed Amended Complaint that "Lime Energy promised that an employee would not be adversely affected if the employee reported in good faith activities that the employee reasonably believed constituted a violation of the SEC rules and regulations relating to fraud against shareholders to senior management in accordance with [the Employee Handbook's] clear and explicit directions."  ECF No. 28-1 at ¶ 73.  The proposed Amended Complaint also states that Plaintiff relied "on the explicit promise in A.4 of the Handbook" when she "initially complained of the improper accounting for revenues and cost of the Utilities Division to her immediate supervisors."  *Id.* at ¶ 58.

The Court finds, however, that contrary to Plaintiff's assertions, the Handbook lacks the "clear and definite" promise required to support a claim of promissory estoppel.  As an initial matter, there is no "explicit promise" contained in section A.4 of the Handbook, the section cited by Plaintiff, and certainly not one relevant to the incidents underlying Plaintiff's complaint.  *See* ECF No. 28-1 at ¶ 58 (stating that Plaintiff relied "on the explicit promise in A.4 of the Handbook").  Plaintiff's actions involved reporting what she believed to be a violation of SEC

rules, but Section A.4 of the Handbook deals with reporting "discriminatory practices based upon race, color, national origin, religion, sex, age, disability or any other characteristic protected by law." ECF 31-2 at 9.  Moreover, although Plaintiff baldly alleges that "Lime Energy promised" that an employee would not be "adversely affected" for reporting potential SEC violations to senior management, the proposed Amended Complaint provides no facts regarding who from Lime, if anyone, made that promise.  Rather, Plaintiff appears to be contending that Lime made such a promise through the Handbook; however, a plain reading of the Handbook does not support Plaintiff's contention.  At best, the Handbook advises Plaintiff of federal law protections regarding whistleblowing and sets forth the Company's policies for employee to report potential SEC violations and for raising complaints.  To the extent that Plaintiff is contending that Defendant promised to abide by the law governing whistleblowers, such a promise is illusory, as Defendant is obligated to follow the law whether it promises to do so or not.

Additionally, the Handbook contains a clear disclaimer indicating that the Handbook sets forth "general statements of policy" that "do not constitute promises of specific treatment to employees and, depending on the circumstances of a given situation, management's actions may vary from these written policies."  ECF No. 31-2 at 6 (Section A.1.)  Thus, Plaintiff could not reasonably rely on any of the Handbook's provisions as an explicit promise.  As the proposed Amended Complaint fails to adequately allege a "clear and definite" promise that Plaintiff could have reasonably relied upon, Plaintiff's proposed Amended Complaint is futile as to this claim. The motion to amend is denied as the proposed promissory estoppel claim.

Proposed Count III—Equitable Estoppel and Unjust Enrichment[1]

In the proposed Amended Complaint, Plaintiff alleges that "Defendant's deliberate misrepresentations to Plaintiff in direct violation of its espoused policies, as the basis for terminating the employment and benefits earned by Plaintiff constitute extraordinary circumstances that justify recovery under the equitable doctrines of estoppel and unjust enrichment." ECF No. 28-1 at ¶ 82.  However, to state a claim for unjust enrichment, a plaintiff must allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of that benefit by the defendant is inequitable." *Wanaque Borough Sewerage Auth. v. Twp. of West Milford*, 677 A.2d 747, 753 (N.J. 1996).  The proposed Amended Complaint simply alleges no facts to support an unjust enrichment claim.  Consequently, Plaintiff's motion is denied to the extent Plaintiff seeks to amend the Complaint to add a claim of unjust enrichment.

To present a claim for equitable estoppel, a party must show (1) a representation or misrepresentation, (2) made with knowledge by the representor that it would induce action, and (3) detrimental reliance on the representation by the claimant.  *Barone v. Leukemia Soc'y of Am.*, 42 F.Supp.2d 452, 464 (D.N.J. 1998).  The reliance must be "reasonable and justifiable" and the burden of proof is on the party asserting the estoppel. *Foley Mach. Co. v. Amland Contractors, Inc.*, 209 N.J.Super. 70, 75–76, 506 A.2d 1263 (App. Div. 1986).  Equitable estoppel is applicable where "conduct, either express or implied, ... reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law." *Ridge Chevrolet–Oldsmobile, Inc. v. Scarano*, 238 N.J. Super. 149, 154, 569 A.2d 296 (App. Div.

---

[1] Plaintiff also captions this proposed Count "Detrimental Reliance."  However, such a claim would merely be duplicative of the promissory estoppel claim in proposed Count II, or an element of equitable estoppel.

1990)(quoting *Miller v. Teachers' Pension & Annuity Fund*, 179 N.J. Super. 473, 477, 432 A.2d 560 (App. Div. 1981)).

Plaintiff alleges she was terminated "because the Company's corporate counsel believed that Plaintiff should have called the 1-800 number in the employee handbook or reported the Company's accounting issues to the SEC" rather than initially reporting them to her immediate supervisors. ECF 28-1 at ¶ 62. Plaintiff contends that Defendant should be equitably estopped from terminating Plaintiff's employment, based on Defendant's representations in its Handbook that include a complaint process in which an employee is to raise complaints first to his or her immediate supervisor. According to Plaintiff, she relied on those representations when she reported the alleged accounting irregularities to her immediate supervisors. In essence, Plaintiff is alleging that because she followed the procedures set forth in the Handbook, that she thought were appropriate, Defendant should be equitably estopped from terminating her employment based upon the Company's position that Plaintiff should have followed a different procedure.

Plaintiff's equitable estoppel claim fails at the outset and is, therefore, futile. There are no facts alleged that Defendant made a representation knowing it would induce Plaintiff to choose the course of action that she did. As set forth in the proposed Amended Complaint, the Handbook allegedly relied upon by Plaintiff included many different options for an employee to raise concerns, presumably depending upon the circumstances and the nature of the concern. For example, the Whistleblower Policy in Section F.8 of the Handbook provides that "[a]n employee who wishes to discuss an alleged SEC violation of the Company" can (1) contact a senior member of management; (2) contact the Lime's outside counsel; (3) contact members of the Company's Audit Committee; or (4) leave a message on the Ethics voice mail hotline at 888-365-0087. ECF No. 31-2 at 88-89. The Internal Complaint Procedure of Section E.8 provides

that when "an employee believes a complaint is in order" regarding "employment[-]related concerns," that employee should first "attempt to resolve the issue with his/her immediate supervisor" and then, if not resolved, elevate the issue to the next level supervisor or Human Resources.  ECF No. 31-2 at 78-79.  The "Non-Discrimination and Anti-Harassment Policy" in Section A.4, also cited by Plaintiff, states that "[i]t is the right and responsibility of individuals who believe they have experienced conduct contrary to the Company's policies or who have concerns about such matters should [sic] file their complaints with their immediate supervisor, their Human Resources Officer, a Company executive or using the Safety and Employee Relations Hotline."  ECF No. 31-2 at 10.  As alleged in the proposed Amended Complaint, the detriment suffered by Plaintiff was the result of how she chose to proceed in light of these options.  Plaintiff points to no representation by Defendant that, under the circumstances before her, induced her to choose one of these options over the others.

Finally, the proposed Amended Complaint contains no factual allegations from which it can be inferred that Plaintiff's employment with Lime was anything other than at-will.  "In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine."  *Witkowski v. Thomas J. Lipton Inc.*, 136 N.J. 385, 397, 643 A.2d 546 (1994) (internal citations omitted).  "An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise."  *Id.*

The Handbook that Plaintiff claims to have relied upon, expressly provides:

There are several things that are important to keep in mind about this handbook. First, it is not a contract of any sort. **Neither this handbook or any other Company document confers any contractual right, either express or implied, to remain in the Company's employ, nor does it guarantee any fixed terms or conditions of your employment. The Company retains the right to make**

> **decisions involving employment as necessary in order to conduct work in a manner that is beneficial to the employees and to the Company.**
>
> Second, the Company adheres to an employment at-will policy. Therefore, continuation of employment is at the discretion of both the employee and the Company and the relationship may be terminated by either party at any time.

ECF No. 31-2 at 4 (bold and underline in original). The Handbook goes on to further state that

> The contents of this Handbook set forth the general statements of policy that are to be used as guidelines by management when handling personnel matters. As such, these policy statements do not constitute promises of specific treatment to employees and depending on the circumstances of a given situation, management's actions may vary from the written policies.
>
> **THE CONTENTS OF THIS MANUAL DO NOT CONSTITUTE THE TERMS OF A CONTRACT OF EMPLOYMENT.**

ECF No. 31-2 at 6. Thus, Plaintiff cannot claim she reasonably relied upon any policy in the Handbook to guarantee her continued employment or specific treatment. Any such representation was expressly disclaimed by Lime. Consequently, the Court finds that Plaintiff's proposed Amended Complaint would be futile. Plaintiff's motion for leave to amend the Complaint is, therefore, denied.

## III.  CONCLUSION AND ORDER

The Court has carefully considered the submissions of the parties and, for the reasons set forth above,

**IT IS** on this 7th day of October 2016,

**ORDERED** that Plaintiff's motion for leave to amend the complaint [ECF No. 28] is DENIED.

*s/ Douglas E. Arpert*
DOUGLAS E. ARPERT
United States Magistrate Judge